Booth, J.,
delivered the opinion of the court:
The plaintiff in this case is entitled to judgment. On May 14, 1903, plaintiff accepted for transportation a consignment of books from the Government to be delivered at Fort Leavenworth, Kans. The shipment reached Kansas City en route on May 27, 1903, and the following day was transferred to a car of the plaintiff’s to be forwarded to their destination. A washout on the Atchison division, over which the shipment had to move, prevented their immediate dispatch, and they were subsequently destroyed by the flood at Kansas City beginning May 30, 1903, and extending to June 6, 1903. Immunity from damage is claimed upon the part of plaintiff, alleging the flood as an act of God, defendants contesting upon the theory of lack of diligence in anticipating the disaster, delay in transportation, and special contractual relations found in the bill of lading. The proper accounting officers deducted from a bill rendered by the plaintiff for several shipments over its line the sum of $1,000. claimed, and not disputed, as the value of the freight so lost, and this suit is to recover said amount.
The defendants practically concede that the flood at Kan-. sas City was unprecedented in. character; it would be idle to assert otherwise. The defense is predicated upon a series of warnings issued by the Weather Bureau indicating the approach of high water and serious overflow. These reports, while indicating danger to some extent, fall so far short of anticipating' the situation that actually occurred, that they are valueless. rs Freshets and overflows were normal conditions in certain seasons of the year in this particular *269 locality. TJiis was known to the plaintiff and most certainly they would not, in conjunction with other railway lines, have erected and maintained at a great expense large terminal facilities in the line of these destructive forces. The flood which succeeded these preliminary warnings was of such an overwhelming extent, so enormous in volume, and so destructive in character that it is no unreasonable presumption to believe that it could not have been foreseen by human foresight or anticipated by prudent men. It swept away all but one large bridge across the river, carried freight cars into the bed of the river, and rose to a height of at least six feet on the floor of the Union Station Building.
The bill of lading contained no limit as to time of delivery and no other extraordinary stipulation which would bring the contract in this particular respect within the rulings of the numerous cases cited by defendants. The record does not disclose that the time consumed in transit or the delay incident to delivery was unreasonable. The court having found from the testimony that the books, crated as they were in boxes, with numerous apertures of sufficient size to permit the percolation of water and mud, charged as it was with acid, through and upon them, were totally destroyed at the time of the flood, it is unnecessary to pursue the inquiry as to what happened to them subsequent to their rescue from the disaster. They were a total loss when received by the consignee and their condition disclosed a prior destruction beyond the- hope of salvage.
The bill of lading contained a clause whereby the goods were to be shipped at “owner’s risk” where the railroad tariff provides lower rates on that account, and at the “ company’s risk” if no such tariff prevailed. This particular shipment was shipped at the company’s risk. Defendants upon this stipulation erect a contention that inasmuch as the shipment was at the company’s risk for which the consignor paid the higher tariff, the plaintiff assumed all risks, excluding the interposition of the immunity from loss relied upon here. The bill of lading is what is known as a “ Government bill of lading,” prepared by agreement for the especial use of the United States and for its convenience in making shipments. There are no stipulations therein which *270 make the instrument a special contract; it follows the published tariff of the railroad company and it is expressly so stated therein. To do otherwise would be unlawful. The published tariff prevails over the bill of lading; the law fixes the rate. (Gulf, Colorado & Santa Fe Railway Co. v. Hefley, 158 U. S., 98.) We need but refer to the fact that Government shipments are on the same basis as all other shipments, except over land-grant railroads, with respect to tariff rates. The term “ carrier’s risk ” did not convert the ordinary bill of lading into a special contract in the absence of other stipulations indicating an express intent so to do, and thereby alter the responsibilities of the carrier from those imposed by law under a usual and customary shipment. The language of the bill of lading was designed to secure for the United States a saving in freight charges which is sometimes provided in consideration of limited responsibility in transportation, and the term “ owner’s risk ” as used in the bill of lading limited the company’s liability in case of loss or damages resulting from ordinary neglect. (New Jersey Steam Navigation Co. v. Merchants Bank, 6 How., 344; Baltimore & Ohio R. R. Co. v. Rathbone, 1 W. Va., 105.) The carrier’s risk at common law is that of an insurer and erne of the two favorable exceptions to liability as such is the one relied upon here.
The bill of lading notified the company that the Government would pay freight rates to the last carrier; that in so doing, if an option prevailed whereby lower rates with decreased liability effected a saving, it was to be understood as accepted by the parties to the contract; if not, the usual published tariff was to be charged and the railroad assumed the common-law liability of an insurer. The United States paid the published tariff rates, no increase over that charged the general public, and no special consideration passed for a special contract in reference to the shipment.
The warrant filed with the record in this case, which the plaintiff declined to cash, amounted to the sum of $280,. a sum admittedly due and not involved in this controversy, may be withdrawn from the files.
Judgment is awarded the plaintiff in the sum of $1,000. It is so ordered.